| Debtor 1 | **Melisa Ann Miller** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | **Middle District Of Pennsylvania** | | |
| | (State) | | |
| Case Number | **1701353** | | |

## Official Form 427

# Cover Sheet for Reaffirmation Agreement 12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

**Part 1:** Explain the Repayment Terms of the Reaffirmation Agreement

| 1. Who is the creditor? | Wells Fargo Bank, N.A. |
|---|---|
| | Name of the creditor |

| 2. How much is the debt? | On the date that the bankruptcy case is filed  $87,640.92 |
|---|---|
| | To be paid under the reaffirmation agreement $87,613.26 |
| | $_____ per month for _____ months (if fixed interest rate) |
| | ***see original contract for complete repayment terms*** |

| 3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).) | Before the bankruptcy case was filed 5.925% |
|---|---|
| | Under the reaffirmation agreement 5.925%   ☒ Fixed rate |
| | ☐ Adjustable rate |

| 4. Does collateral secure the debt? | ☐ No |
|---|---|
| | X Yes. Describe the collateral.   75 ROSEMARY CT, MANCHESTER, PA 17345 |
| | Current market value $ |

| 5. Does the creditor assert that the debt is non-dischargeable? | X No |
|---|---|
| | ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is non-dischargeable. |

| 6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts. | Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement |
|---|---|---|
| | 6a. Combined monthly income from line 12 of Schedule I  $ *2844* | 6e. Monthly income from all sources after payroll deductions  $ *2844* |
| | 6b. Monthly expenses from line 22c of Schedule J  − $ *2520* | 6f. Monthly expenses  − $ *2520* |
| | 6c. Monthly payments on all reaffirmed debts not listed on Schedule J  − $ *0* | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses  − $ *0* |
| | 6d. Scheduled net monthly income  $ *324*  Subtract lines 6b and 6c from 6a.  If the total is less than 0, put the number in brackets. | 6h. **Present net monthly income**  $ *324*  Subtract lines 6f and 6g from 6e.  If the total is less than 0, put the number in brackets. |

Case 1:17-bk-01353-RNO    Doc 12    Filed 07/18/17    Entered 07/18/17 10:46:34    Desc
Main Document       Page 1 of 26

| 7. **Are the income amounts on lines 6a and 6e different?** | ☒ No<br>☐ Yes. Explain why they are different and complete line 10.<br>_____<br>_____ |
| --- | --- |
| 8. **Are the expense amounts on lines 6b and 6f different?** | ☒ No<br>☐ Yes. Explain why they are different and complete line 10.<br>_____<br>_____ |
| 9. **Is the net monthly income in line 6h less than 0?** | ☒ No<br>☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.<br>_____<br>_____<br>_____ |
| 10. **Debtor's certification about lines 7-9**<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ _____        ✗ _____<br>Signature of Debtor 1                    Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?** | ☐ No<br>☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>　　☐ No<br>　　☒ Yes |

---

**Part 2:    Sign**

| Whoever fills out this form must sign here. | I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.* |
| --- | --- |

✗ _Parur P. Luts_____        Date _____
Signature                                                        MM / DD / YYYY

Printed Name _____                    _Kathleen A Frazier_
                                                                  _KAthleen A Frazier_
Check one:                                                _7/17/17_
☒ Debtor or Debtor's Attorney
✗  Creditor or Creditor's Attorney

---

** The Creditor completed questions 1 – 5 (but not the current market value) on this form. The Debtor(s) completed the remaining questions on this form. By signing this form, the Creditor is only certifying: (1) that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties; and (2) the information in questions 1 – 5 (but not the current market value). The Creditor is not certifying the accuracy of any information supplied by the Debtor(s).

☐ **Presumption of Undue Hardship**
☑ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement
in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
### Middle District Of Pennsylvania

In re    MELISA ANN MILLER,                                    Case No. 1701353
                    Debtor
                                                                                Chapter 7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and          ☑ Part D: Debtor's Statement in
   Notice to Debtor (pages 1 - 5)                          Support of Reaffirmation Agreement
☑ Part B: Reaffirmation Agreement                  ☐ Part E: Motion for Court Approval
☑ Part C: Certification by Debtor's Attorney

*[**Note:** Complete Part E only if debtor was not represented by an attorney during
the course of negotiating this agreement. **Note also:** If you complete Part E, you must
prepare and file Form 2400C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor: Wells Fargo Bank, N.A.**

☐ [Check this box if] Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal
   Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.    DISCLOSURE STATEMENT

**Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:**

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm:                    $67,613.26

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have
accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional
amounts which may come due after the date of this disclosure. Consult your credit agreement.*

HEQBK32 -2016/03                                                                                        624277994

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:  5.925%.

*—— And/Or ——*

~~(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:~~

~~$_____ @ _____ %;~~
~~$_____ @ _____ %;~~
~~$_____ @ _____ %.~~

~~b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.~~

~~(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: _____ %.~~

*--- And/Or --*

~~(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:~~

~~$_____ @ _____ %;~~





$\text{\$\underline{\hspace{3em}} @ \underline{\hspace{3em}} \%;}$
$\text{\$\underline{\hspace{3em}} @ \underline{\hspace{3em}} \%.}$

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:
The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of
items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in
Part B.

<u>Item or Type of Item</u>                        <u>Original Purchase Price or Original Amount of Loan</u>
Home Equity Account                        $48,432.00
75 ROSEMARY CT
MANCHESTER, PA 17345

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

The Debtor(s) agrees to pay Creditor the sum of $67,613.26, plus interest thereon computed from 04/03/2017. The interest rate as of the date of this Reaffirmation Agreement is 5.925% per annum. The interest rate, however, shall vary according to the terms set forth in the Debtor(s)' loan or line of credit agreement. The amount of the Debtor(s)' minimum monthly payment shall be calculated according to the terms set forth in the Debtor(s)' loan or line of credit agreement. The Debtor(s)' first monthly payment shall be due on 05/20/2017. The Debtor(s)' remaining monthly payments will be due on the same day of each succeeding month thereafter until 08/20/2046 when the entire outstanding principal balance, plus interest shall be due and payable in full. Debtor(s) agrees to immediately repay, upon demand, any outstanding balance that exceeds the maximum credit limit established under the original Agreement. As of the date of this Agreement, the minimum monthly payment due on account xxxx851998 is $409.07. However, because the interest rate on these accounts is a variable rate, the minimum monthly payment due on each account may fluctuate from month to month.
                  ***see original contract for complete repayment terms***

## 2.  INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

    1.  Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

    2.  Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

    3.  If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

    4.  If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

    5.  The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

    6.  If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

    7.  If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

**Form 2400A/B ALT - Reaffirmation Agreement (Cont.)**                    **5**

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

_What are your obligations if you reaffirm the debt?_ A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

_Are you required to enter into a reaffirmation agreement by any law?_ No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

_What if your creditor has a security interest or lien?_ Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word ''may'' to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

   Home Equity Account Opened 08/18/2006, $48,432.00

   On 03/22/2007, the credit line was increased to $70,000.00

   ***see original contract for complete repayment terms***

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

   NONE

SIGNATURE(S):

| Borrower:<br>MELISA ANN MILLER | Accepted by creditor:<br>Wells Fargo Bank, N.A. |
|---|---|
| (Print Name) | (Printed Name of Creditor)<br>MAC X2303-01A, 1 Home Campus,<br>Des Moines, IA 50328 |
| (Signature) | (Address of Creditor) |
| Date: 6-22-17 | _Kathleen A Frazier_<br>(Signature) |
| Co-borrower, if also reaffirming these debts: | _Kathleen A Frazier_ VP Loan Documentation |
| (Print Name) | (Printed Name and Title of Individual<br>Signing for Creditor) |
| (Signature) | Date of creditor acceptance: |
| Date: | 7/12/17 |

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: PAUL G LUTZ

Signature of Debtor's Attorney: _____

Date: ___06/05/2017___

HEQBK32 -2016/03

624277994

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and
the debtor is represented by an attorney, read section 3. Sign the appropriate
signature line(s) and date your signature. If you complete sections 1 and 2
**and** your income less monthly expenses does not leave enough to make the
payments under this reaffirmation agreement, check the box at the top of page
1 indicating "Presumption of Undue Hardship." Otherwise, check the box at
the top of page 1 indicating "No Presumption of Undue Hardship"]*

1.  I believe this reaffirmation agreement will not impose an undue hardship on my
dependents or me. I can afford to make the payments on the reaffirmed debt because my
monthly income (take home pay plus any other income received) is $ 2844.⁰⁰, and my actual
current monthly expenses including monthly payments on post-bankruptcy debt and other
reaffirmation agreements total $ 2636.⁰⁰, leaving $_____ to make the required payments
on this reaffirmed debt.                *which includes*

I understand that if my income less my monthly expenses does not leave enough to
make the payments, this reaffirmation agreement is presumed to be an undue hardship on me
and must be reviewed by the court. However, this presumption may be overcome if I explain
to the satisfaction of the court how I can afford to make the payments here: _____

_____

_____

**(Use an additional page if needed for a full explanation.)**

2.  I received a copy of the Reaffirmation Disclosure Statement in Part A and a
completed and signed reaffirmation agreement.

Signed: _Melissa Ann Mills_____
        (Debtor)

        _____
        (Joint Debtor, if any)
Date:   _6-22-17_____

*— Or —*

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3.  I believe this reaffirmation agreement is in my financial interest. I can afford to
make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure
Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
        (Debtor)

        _____
        (Joint Debtor, if any)
Date:   _____

Case 1:17-bk-01353-RNO   Doc 12   Filed 07/18/17   Entered 07/18/17 10:46:34   Desc
Main Document      Page 10 of 26

## PART E: MOTION FOR COURT APPROVAL

*[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

## MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (check all applicable boxes):

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed: _____
        (Debtor)

        _____
        (Joint Debtor, if any)
Date:   _____

*Regional Banking*

Wells Fargo Bank, N.A.

AGREEMENT DATE: 08-18-2006
ACCOUNT #:
REFERENCE #:

# EquityLine with FlexAbility® Agreement and Disclosure Statement (the "Agreement")

**Borrower Name:**
THOMAS L MILLER And MELISA A MILLER

**Property Address:**
75 ROSEMARY COURT, E MANCHESTER TWNSHIP, PENNSYLVANIA 17345

**Mailing Address for Billing Purposes (if different):**
N/A

**Credit Line Limit:**
48,432.00

## SECTION 1: MY ACCOUNT AGREEMENT

In this Agreement, the words, "I," "me," "my," and "Borrower" (which also means "we," "us," "our," and "Borrowers," if more than one customer signs below) refer to each person who signs this Agreement. The words "you," "your," "Lender," and "the Bank" refer to Wells Fargo Bank, N.A. and any successor or assign or subsequent holder of this Agreement. This Agreement governs my EquityLine with FlexAbility® Account (the "Account") with the Bank. If more than one person signs this Agreement, we are jointly and individually bound by its terms. We are separately liable to the Bank for the entire amount owed on the Account. We are each liable as a principal and not merely as a guarantor, even if one or more of us does not use the Account.

## SECTION 2: SECURITY INTEREST

I am giving the Bank a deed of trust, mortgage or other security instrument including all modifications, addenda and amendments thereto (the "Security Instrument"), signed the same date as this Agreement. The Security Instrument gives you a security interest in the property located at the address shown above (the "Property").

## SECTION 3: MY EQUITYLINE WITH FLEXABILITY

My Account is a revolving account. My credit limit is shown above and will be displayed on each of my billing statements. During the Draw Period (described below), my available credit will be my credit limit minus the sum of all unpaid Advances posted to my Account. During the Draw Period, as I repay the principal balance I owe on my Account, my available credit will be replenished. I agree not to request an Advance that would cause my balance to exceed my credit limit. If at any time the balance of my Account exceeds my credit limit, I agree to

5 SEP 06 2006 1 0 6

Documents Processed 08-17-2006, 11:28:19

immediately repay the amount that exceeds my credit limit.

I may apply for an increase in my credit limit, and if I do so I agree to pay any application, appraisal and other fees, including increased costs for title insurance, as the Bank may require. If the Bank approves my application and increases my credit limit, I will provide and maintain such additional hazard insurance (including flood insurance, if necessary) and sign any additional documents as the Bank may require. All such increased credit amounts will be governed by the terms and conditions of this Agreement and will be secured by the Security Instrument.

The Bank may from time to time in its sole discretion, approve additional credit for me under the terms of this Agreement. I will receive written notice from the Bank of any such offer to increase my credit limit. I may accept such offer of increased credit by my use of those additional funds and by signing any additional documents the Bank may require. All such increased credit amounts will be governed by the terms and conditions of this Agreement and will be secured by the Security Instrument.

## SECTION 4: MY ACCOUNT DURING THE DRAW PERIOD

### DRAW PERIOD
My Account has a Draw Period of 10 years from the date of this Agreement during which I may request Advances. At the end of the Draw Period, I may request that the Bank renew the Draw Period for an additional 10 years. The Bank may, at its option, approve my request to extend the Draw Period. I may not obtain Advances after the Draw Period ends.

When the Draw Period ends, the outstanding unpaid Line of Credit Advances will convert to a Final Fixed Rate Advance as detailed below in Section 5, MY ACCOUNT DURING THE REPAYMENT PERIOD.

### ADVANCES DURING THE DRAW PERIOD
There are 2 types of Advances on my Account:

- Line of Credit Advances
- Fixed Rate Advances

The Bank must honor my request for Line of Credit Advances and Fixed Rate Advances (collectively, "Advances") as long as I am in compliance with all terms of this Agreement, including all modifications, addenda and amendments to it, and the Security Instrument.

As I use my Account, my available credit will be my credit limit minus the sum of all unpaid Advances. As I repay the principal balance I owe on my Account, my available credit will be replenished. I will not request an Advance that would cause the balance in my Account to exceed my credit limit, or which would violate the terms of this Agreement or any law. If I do exceed my credit limit, I agree to immediately repay the amount that exceeds my credit limit.

I understand that the Bank may refuse to allow any Advance if the Advance does not comply with every requirement of this Agreement. The Bank may choose at its sole discretion to make an Advance that does not comply. The Bank may allow any Advances in any sequence convenient to the Bank.

The Bank is authorized to make an Advance from my Account when it receives a request given by any person who has signed this Agreement. If there are conflicting demands made by any of us who signed this Agreement, the Bank has the option to refuse to make any Advance that has not been requested by all of us together. The Bank will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when the Bank acts upon such instructions believing them to be genuine.

### LINE OF CREDIT ADVANCES
Each Line of Credit Advance I request will be in the amount of $300 or greater.

Documents Processed 08-17-2006, 11:28:19

## LINE OF CREDIT ADVANCE METHODS

While my Account is not in default, closed, or suspended, I may obtain a Line of Credit Advance by:

- Requesting a Line of Credit Advance in person at any Bank branch
- Requesting a Line of Credit Advance by phone
- Transferring funds by using Wells Fargo Online®
- In other ways the Bank authorizes from time to time
- Obtaining a cash withdrawal or transferring funds by using my Wells Fargo ATM Card or Wells Fargo ATM & Check Card, if offered by the Bank and I select such service
- Writing an Advance request check or draft which the Bank has provided to me
- Using my EquityLine Platinum® card, if offered by the Bank and I select such service

## LINE OF CREDIT ADVANCES PERIODIC FINANCE CHARGES

Finance charges begin to accrue on Line of Credit Advances immediately when funds are advanced. The periodic FINANCE CHARGE for a billing cycle is the sum of the periodic FINANCE CHARGE for each day in the billing cycle. To determine the periodic FINANCE CHARGE for a day in the billing cycle, multiply the Daily Periodic Rate by the daily balance for Line of Credit Advances (including current transactions) each day. To determine the daily balance, take the Line of Credit Advances balance at the beginning of each day (excluding any unpaid FINANCE CHARGES or other charges provided for under this Agreement), add any new Line of Credit Advances, and subtract any payments or credits that apply to the repayment of Line of Credit Advances. The result is the daily balance.

The Daily Periodic Rate for Line of Credit Advances is equal to 1/365 (1/366 during leap years) of an Index plus a Margin. The Index is the highest Prime Rate as published in the Western Edition of *The Wall Street Journal* "Money Rates" table. The Margin, the initial Daily Periodic Rate, and the initial ANNUAL PERCENTAGE RATE, are each disclosed below. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

The Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE on my Line of Credit Advances will be adjusted the day after an Index change is published, using the new Index value. Therefore, the Daily Periodic Rate for Line of Credit Advances may change (increase or decrease) as often as once each day based on changes in the Index. I understand that any increase may cause me to make larger monthly payments.

## LIFETIME RATE CAP FOR LINE OF CREDIT ADVANCES

The Daily Periodic Rate for Line of Credit Advances will never exceed 0.049315% (corresponding **ANNUAL PERCENTAGE RATE** of 18.00%). This is the Lifetime Rate Cap for Line of Credit Advances.

## LIFETIME RATE FLOOR FOR LINE OF CREDIT ADVANCES

The Daily Periodic Rate for Line of Credit Advances will never fall below 0.011616% (corresponding **ANNUAL PERCENTAGE RATE** of 4.240%). This is the Lifetime Rate Floor for Line of Credit Advances.

## MY INITIAL RATE FOR LINE OF CREDIT ADVANCES

As discussed above, my Daily Periodic Rate is based on the value of the Index plus a Margin. The initial Index value that applies to my Account will be the value of the Index on the day I open my Account. The following disclosures are based on the value of the Index in effect on 08-17-2006. I understand that if I open my Account after this date, my actual Index value, Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE may be higher or lower than the rates disclosed below.

My Margin for Line of Credit Advances is equal to ONE AND ONE HUNDRED THOUSANDTHS OF ONE PERCENTAGE POINT (1.100%) (the "Margin"). As a result, unless the Lifetime Rate Cap for Line of Credit Advances or Lifetime Rate Floor for Line of Credit Advances require the Bank to apply a different rate to my Account, my initial Daily Periodic Rate is 0.025616% (corresponding **ANNUAL PERCENTAGE RATE** of 9.350%).

## LINE OF CREDIT ADVANCES MINIMUM MONTHLY PAYMENT

During the Draw Period, my Minimum Monthly Payment for Line of Credit Advances shall be equal to:

The sum of all accrued and unpaid periodic FINANCE CHARGES on Line of Credit Advances, plus credit insurance premiums, if any.

## FIXED RATE ADVANCES DURING THE DRAW PERIOD

I have the option to convert outstanding unpaid Line of Credit Advances to Fixed Rate Advances during the Draw Period based on credit limit availability. The minimum Fixed Rate Advance during the Draw Period is $10,000.

I may request up to 8 Fixed Rate Advances during the Draw Period. No more than 3 Fixed Rate Advances may be outstanding at any one time. At the time I request a Fixed Rate Advance, I may select the repayment term for that Fixed Rate Advance. The repayment term must be a period of whole years and in the range described below:

| Fixed Rate Advance Amount | Term Range |
|---|---|
| $10,000 - 19,999.99 | 5 to 15 years |
| $20,000 - 49,999.99 | 5 to 30 years |
| $50,000 and above | 7 to 30 years |

## FIXED RATE ADVANCE METHODS DURING THE DRAW PERIOD

While my Account is not in default, closed, or suspended, I may obtain a Fixed Rate Advance by:

- Requesting a Fixed Rate Advance in person at any Bank branch.
- Requesting a Fixed Rate Advance by phone.

## FIXED RATE ADVANCES PERIODIC FINANCE CHARGES DURING THE DRAW PERIOD

Fixed Rate Advances will accrue periodic FINANCE CHARGES beginning on the day that the Bank converts any Line of Credit Advances to a Fixed Rate Advance. I will be charged a periodic FINANCE CHARGE on all outstanding unpaid Fixed Rate Advances each day at a fixed Daily Periodic Rate. To determine the periodic FINANCE CHARGE for a day in the billing cycle, multiply the Daily Periodic Rate by the daily balance for the Fixed Rate Advance (including current transactions) each day. To determine the daily balance for the Fixed Rate Advance, take the Fixed Rate Advance balance at the beginning of each day (excluding any unpaid FINANCE CHARGES or other charges provided for under this Agreement), and subtract any payments or credits that apply to the repayment of the Fixed Rate Advance. The result is the daily balance.

The Daily Periodic Rate for Fixed Rate Advances is equal to 1/365 (1/366 during leap years) of an Index plus a Margin. The Index is the highest Prime Rate as published in the Western Edition of *The Wall Street Journal* "Money Rates" table. The Bank will use the value of the Index in effect on the last business day preceding the day the Bank receives my request for a Fixed Rate Advance. The Margin for Fixed Rate Advances is eight percentage point(s) (8.0%). The Bank may, in its sole discretion, apply a lower Margin. The corresponding ANNUAL PERCENTAGE RATE for Fixed Rate Advances will never be more than the Lifetime Rate Cap for Fixed Rate Advances shown below. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

## LIFETIME RATE CAP FOR FIXED RATE ADVANCES DURING THE DRAW PERIOD

The Daily Periodic Rate for Fixed Rate Advances will not exceed 0.0493% (corresponding ANNUAL PERCENTAGE RATE of 18.000%). This is the Lifetime Rate Cap for Fixed Rate Advances.

## FIXED RATE ADVANCES MINIMUM MONTHLY PAYMENT DURING THE DRAW PERIOD

During the Draw and Repayment Periods, my Minimum Monthly Payment for each Fixed Rate Advance will be equal to the amount of principal plus periodic FINANCE CHARGE sufficient to repay the Fixed Rate Advance within its applicable term in substantially equal, fully amortizing monthly payments at the applicable corresponding ANNUAL PERCENTAGE RATE. This assumes that all payments will be made on their due dates, which will be the same as the due dates for my Line of Credit Advances Minimum Monthly Payment described above. If my payments are not consistently made when due, the Fixed Rate Advance Minimum Monthly Payment may not fully repay the Fixed Rate Advance over its term and my final payment may be higher. During the Draw Period, my available credit for new Line of Credit Advances will be replenished by the

Documents Processed 08-17-2006, 11:28:19

amount of principal I repay on my Fixed Rate Advances.

## MY TOTAL PAYMENT DUE DURING THE DRAW PERIOD

I will receive monthly billing statements from the Bank. I must pay at least the amount of the Total Payment Due by the Date Due, as shown on each monthly billing statement.

The "Total Payment Due" during the Draw Period consists of my Line of Credit Advances Minimum Monthly Payment plus my Fixed Rate Advances Minimum Monthly Payment(s) together with all past due amounts and overlimit amounts and all other charges due.

# SECTION 5: MY ACCOUNT DURING THE REPAYMENT PERIOD

## REPAYMENT PERIOD

I understand that I may not receive new Advances after the Draw Period ends. At that time, I will begin the Repayment Period, which will continue until the Maturity Date described below, but in no event more than 30 years.

## REPAYMENT OF OUTSTANDING FIXED RATE ADVANCES

During the Repayment Period, I will continue to make any Fixed Rate Advance Minimum Monthly Payments that were in effect at the end of the Draw Period. If my payments are not consistently made when due, the Fixed Rate Advance Minimum Monthly Payment may not fully repay the Fixed Rate Advance over its term and my final payment may be higher.

## REPAYMENT OF FINAL FIXED RATE ADVANCE

At the end of the Draw Period, the outstanding unpaid Line of Credit Advances balance will be converted into a final Fixed Rate Advance (the "Final Fixed Rate Advance"). The Final Fixed Rate Advance will have a term of 15 years if my total unpaid Line of Credit Advances balance is less than $20,000, or 30 years if my total unpaid Line of Credit Advances balance is $20,000 or more (unless I request a shorter term).

The Final Fixed Rate Advance Minimum Monthly Payment will be the greater of $100 or an amount sufficient to repay the Final Fixed Rate Advance balance by the end of the scheduled term in substantially equal, fully amortizing monthly payments of principal and periodic FINANCE CHARGE at the applicable corresponding ANNUAL PERCENTAGE RATE. If my payments are not consistently made when due, the Final Fixed Rate Advance Minimum Monthly Payment may not fully repay the Final Fixed Rate Advance over its term and my final payment for the Final Fixed Rate Advance may be higher. The Bank will notify me in advance of any changes to my Total Payment Due as a result of the Final Fixed Rate Advance Minimum Monthly Payment.

## PERIODIC FINANCE CHARGE ON FINAL FIXED RATE ADVANCE BALANCE

Periodic FINANCE CHARGES on my Final Fixed Rate Advance balance will begin to accrue on the first day of the Repayment Period. I will be charged a periodic FINANCE CHARGE based on the unpaid Final Fixed Rate Advance balance at the end of each day at a fixed Daily Periodic Rate.

The Daily Periodic Rate for the Final Fixed Rate Advance is equal to 1/365 (1/366 during leap years) of an Index plus a Margin. The Index is the highest Prime Rate as published in the Western Edition of *The Wall Street Journal* "Money Rates" table. The Bank will use the Index value published on the last business day during the Draw Period. The Margin for the Final Fixed Rate Advance is eight percentage point(s) (8.0%). The Bank may, in its sole discretion, apply a lower Margin. The corresponding ANNUAL PERCENTAGE RATE on my Final Fixed Rate Advance will never be more than the Lifetime Rate Cap for Fixed Rate Advances shown below. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

## LIFETIME RATE CAP FOR MY FINAL FIXED RATE ADVANCE

The Daily Periodic Rate for my Final Fixed Rate Advance will not exceed 0.0493% (corresponding ANNUAL PERCENTAGE RATE of 18.000%). This is the Lifetime Rate Cap for my Final Fixed Rate Advance.

## MY TOTAL PAYMENT DUE DURING THE REPAYMENT PERIOD

I must pay at least the amount of the Total Payment Due by the Date Due, as shown on each monthly billing

Documents Processed 08-17-2006, 11:28:19

statement.

The "Total Payment Due" during the Repayment Period is the total of each Fixed Rate Advances Minimum Monthly Payment that is still due as the result of Fixed Rate Advances in effect on the day before the end of the Draw Period, plus the Final Fixed Rate Advance Minimum Monthly Payment as described above, together with all past due amounts and overlimit amounts and all other charges due.

## MATURITY DATE
The Maturity Date on my Account shall be the latest maturity date of any Fixed Rate Advance or the Final Fixed Rate Advance, but in no event more than 30 years from the end of the Draw Period. At that time, any remaining balance must be paid in full.

# SECTION 6: AUTOMATIC PAYMENT DISCOUNT

The Automatic Payment Discount is not applicable to this Account.

# SECTION 7: OTHER FINANCE CHARGES

In addition to paying periodic FINANCE CHARGES, as described in Sections 4 and 5 above, I also agree to pay the following additional fees, each of which is a **FINANCE CHARGE**:

N/A

# SECTION 8: CLOSING COSTS

I agree to pay to the Bank the following closing costs at the opening of my Account:

N/A

* This amount is an estimate. The actual recording/filing fee is shown on the HUD Settlement Statement that is attached to and incorporated into this Agreement.

The following closing costs are FINANCE CHARGES:

N/A

# SECTION 9: ADDITIONAL FEES, COSTS AND CHARGES

In addition to the FINANCE CHARGES and closing costs described above, I agree to pay the following non-refundable fees, costs and charges, which will be owed once charged to my Account.

## ANNUAL FEE
During each year of the Draw Period, whether or not I use the Account, a $75.00 non-refundable annual fee will be charged to my Account. This fee is waived the first year my Account is opened, and is billed beginning in the second and each succeeding year, during the Draw Period, on the anniversary date of this Agreement.

## LATE CHARGES
During the Draw Period, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the Line of Credit Minimum Monthly Payment if my payment is more than 10 days past due.

During the Repayment Period, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the sum of all Fixed Rate Advance Minimum Monthly Payments if my payment is more than 10 days past due.

## PREPAYMENT FEE

I agree to pay a prepayment fee of $500.00. This fee will be due and payable in full at any time within the first 3 years from the date of this Agreement if I close my Account (for any reason other than default due to non-payment, casualty loss, refinance with you or your affiliate, or termination by the Bank). If my Account remains open (is not closed or suspended under Section 17 or 18 below) for more than 3 years from the date of this Agreement, no prepayment fee will be assessed. No tender of a prepayment of all amounts due under this Agreement shall be effective unless and until such prepayment is accompanied by the applicable prepayment fee.

## OTHER CHARGES

To the extent allowed by law, I agree to pay the following fees if I request or authorize these additional services:

    (a) **Fax Fee:** The Bank will charge a fax fee in the amount of ten dollars ($10.00) if I request or authorize others to request any document or letter to be transmitted by facsimile (fax) machine.

    (b) **Research Fee and Photocopy Fee:** The Bank will charge a research/photocopy fee in the amount of five dollars ($5.00) per photocopy if I request or authorize others to request that the Bank research my Account or provide photocopies of Account documents for any purpose other than a billing error inquiry.

    (c) **Reconveyance or Satisfaction Fee:** The Bank will charge reconveyance and satisfaction fees as allowed by applicable law.

    (d) **Stop Payment Fee:** The Bank will charge a stop payment fee in the amount of twenty-five dollars ($25.00) if I request or authorize others to request that the Bank stop payment on a draft I have used to request a Line of Credit Advance.

    (e) **Return Check Fee:** The Bank will charge a return check fee in the amount of twenty-five dollars ($25.00) if I make a payment with a check that is dishonored for any reason.

    (f) **Overlimit Fee:** The Bank will charge an overlimit fee in the amount of twenty-five dollars ($25.00) for each billing cycle in which I have exceeded my credit limit or have requested an Advance that would have caused me to exceed my credit limit.

    (g) **Return Advance Check Fee (insufficient funds):** The Bank will charge a return advance check fee in the amount of twenty-five dollars ($25.00) for each check or draft used to request a Line of Credit Advance that is returned unpaid (dishonored) by the Bank due to the requested Advance not meeting all requirements of this Agreement.

## SECTION 10: COLLECTION COSTS AND ATTORNEY'S FEES

If I am in default, I will pay the Bank's collection costs, attorney's fees and other expenses of enforcing the Bank's rights under this Agreement and the Security Instrument, unless prohibited by applicable law.

## SECTION 11: METHOD OF PAYMENT

Depending on my chosen method of payment, the Bank will do one of the following each monthly billing cycle, during both the Draw and Repayment Periods:

**Monthly Billing Statement:** Provide me with a monthly billing statement showing the Total Payment Due and the due date, and including a remittance portion that I must return with my monthly payment.

## SECTION 12: SCHEDULED PAYMENT DUE DATE

My monthly payment due date for my Total Payment Due is the 20TH day of each and every month during both the Draw and Repayment Periods.

## SECTION 13: MY PROMISE TO PAY

I promise to pay to the order of the Bank the total of all Advances which I receive or which I authorize to be made from my Account. I promise to pay the total of any FINANCE CHARGE, plus all amounts past due, overlimit amounts, and any late charges, fees, other charges and other obligations charged to my Account under this Agreement or the Security Instrument. All payments made under this Agreement will be made in U.S.

Documents Processed 08-17-2006, 11:28:19

Dollars. I will not mail any cash payments to the Bank. I may not use Advance request checks to make payments on my Account.

The Bank may, at its discretion, withhold a portion of the available credit on my Account up to the amount of any payment due in order to assure that my check or other payment instrument is honored.

I will make payments at the Bank's address for receiving a payment, as indicated on my payment coupon and billing statement, unless another payment method is authorized by the Bank. Each non-electronic payment I make will be accompanied by the remittance portion of my billing statement.

I understand that payments I make by mail to the address indicated on my billing statement or payment coupon will be credited to my Account as of the date received (including Saturdays, Sundays, and holidays) if the Bank receives the payment prior to 5 p.m. local time for the payment address.

Payments I make from a qualified account ("Automatic Payments") pursuant to an Authorization for Automatic Transfer will be credited to my Account on the date received (including Saturdays, Sundays, and holidays).

Payments I make at a Bank branch and received prior to established cut-off times will be credited to my Account on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and Bank observed holidays. Payments made at a Bank branch received on a Saturday, Sunday, or Bank observed holiday or after established cut-off times will be credited as of the next business day.

Payments I make online, by ATM, by telephone, or by any other means the Bank may make available to me and received prior to established cut-off times will be credited to my Account on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and federal holidays. Payments made online, by ATM, by telephone, or by any other means the Bank may make available to me received on a Saturday, Sunday, or federal holiday or after established cut-off times will be credited as of the next business day.

I will not make payment or authorize others to make payment for me by means of a single aggregated payment, which includes payments for this Account and any other account(s), unless the payment is made in compliance with the Bank's requirements for multiple account payments.

The Bank may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of the Bank's rights under this Agreement. The Bank's acceptance of checks or money orders labeled "payment in full," or words to that effect, will not constitute an accord and satisfaction nor a waiver of any rights the Bank has to receive full payment. If I intend to condition a payment, pay the Account in full with less than the total amount owed, or give payment instructions, I will clearly set out such intention, conditions and instructions in a separate letter accompanying my payment, and mail both to Wells Fargo Bank, N.A., P.O. Box 2993, Portland, OR 97208.

## SECTION 14: TAX DEDUCTIBILITY

I understand that I should consult a tax advisor regarding the deductibility of interest and charges under my Account.

## SECTION 15: REEVALUATION OF CREDIT QUALIFICATIONS AND CREDIT REPORTS

My signature on this Agreement authorizes the Bank to obtain credit information about me, including credit bureau reports, at any time. Such credit bureau reports may be requested or used in connection with (a) renewal or extension of this Agreement, (b) review of my Account, (c) taking any collection action, or (d) any other legitimate purposes associated with my Account. I agree to submit current financial information to the Bank upon the Bank's request. The Bank may reexamine and reevaluate my credit qualifications at any time. The Bank may report its experience with me and my Account to others, to the extent allowed by law.

Documents Processed 08-17-2006, 11:28:19

## SECTION 16: PAYOFF BALANCE INFORMATION

The Bank will tell me the balance required on any given day to pay off my Account in full, if I so request. If such request is made on my behalf by an escrow holder, settlement agent or other third party on my behalf during the Draw Period, the Bank may immediately freeze my Account. I agree that the Bank's receipt of such a request from an escrow holder, settlement agent or other third party on my behalf will be considered to be a request by me to suspend credit privileges on my Account. While my Account is frozen, I cannot receive new Advances and the Bank will return unpaid any Advance request checks the Bank receives and will refuse to honor any other Advance request made on my Account. This payoff freeze will be lifted and my Account reopened if the request for payoff balance information is withdrawn and the Bank has received written confirmation from the escrow holder, settlement agent or other third party on my behalf that the escrow or other settlement has been cancelled.

## SECTION 17: DEFAULT

I will be in default if (a) I fail to meet the repayment terms of this Agreement for any outstanding balance, or (b) there is fraud or material misrepresentation by me in connection with this Agreement, or (c) any action or inaction by me adversely affects the Bank's security in the Property, including without limitation, transfer of the Property without the Bank's consent, failure to maintain required insurance or pay required taxes, revocation or termination of any revocable trust that is an owner of the Property, or the death of any person who has signed this Agreement, or (d) I am an executive officer of the Bank and federal law governing credit extended by a bank to its executive officer, including without limitation Section 215.5(d)(4) of Federal Reserve Regulation O (12 CFR § 215.5(d)(4)), permits or requires immediate payment of my entire Account balance.

If I am in default, the Bank, subject to applicable law, may do any or all of the following: (a) close my Account immediately, without notice; (b) return unpaid any outstanding Advance request checks drawn on my Account and refuse to honor any other Advance request made on my Account; and (c) require immediate payment of the entire balance of my Account, and, if I fail to pay, exercise the Bank's rights under the Security Instrument, which may result in the loss of the Property. If I am in default, the method of determining the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will remain as described in this Agreement.

The Bank and I agree that notwithstanding any other provision of this Agreement or the Security Instrument, the Bank will have the right to terminate or suspend my Account to the extent permitted by applicable law.

## SECTION 18: CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT; REINSTATEMENT OF CREDIT

### CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT BY BORROWER

Any one Borrower can close the Account by paying in full and sending a signed letter to the Bank at the address indicated on my monthly billing statement requesting that the Account be closed. Any one Borrower may terminate the Advance feature, at any time during the Draw Period, by sending a signed letter to the Bank at the address indicated on my monthly billing statement requesting the termination of the Advance feature. To reactivate the Advance feature on the Account during the Draw Period, the Bank will require all Borrowers to sign a written request and mail to the address indicated on my monthly billing statement.

### CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT BY BANK

I will receive a written notice if the Bank suspends or freezes my Account or reduces my credit limit as required under applicable law. The notice will include the reason(s) for such action(s). Thereafter, if I wish to reinstate my Account or increase my credit limit, I agree to send a written request to the Bank at the address specified on my monthly billing statement, signed by all of the Borrowers, along with satisfactory evidence to the Bank that the reason(s) for suspension or reduction of my Account no longer exist(s). I also agree to provide the Bank promptly with any additional information necessary to support my request.

The Bank may suspend the use of my Account and temporarily prohibit future Advances during the Draw

Documents Processed 08-17-2006, 11:28:19

Period, or the Bank may reduce my credit limit, for any reason permitted by applicable law, including without limitation, (a) if the annualized Daily Periodic Rate equals or exceeds the Lifetime Rate Cap stated herein, (b) there is any material change in my financial circumstances that the Bank reasonably believes will make me unable to fulfill my repayment obligations under this Agreement, (c) the value of the Property declines significantly below its original appraised value, as determined by the Bank, (d) my failure to comply with any material obligation under this Agreement or the Security Instrument, (e) a regulatory authority has notified the Bank that continued Advances would constitute an unsafe and unsound business practice, (f) I am in default under Section 17 above, or (g) government action prevents the Bank from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement or impairs the Bank's security interest in the Property, such that the value of the security interest is less than 120 percent of the credit limit.

In the event of a suspension of my Account, the Bank is authorized to obtain such information as may be required by the Bank, including without limitation, credit reports and appraisals of the Property, to evaluate any request by me to reinstate the Account. To the extent permitted by applicable law, I agree to pay to the Bank the cost of obtaining such additional information.

If my Account is closed or suspended for any reason, the Bank may return unpaid any outstanding Advance request checks drawn on my Account and refuse to honor any other Advance request made on my Account. I will continue to be responsible for full payment of the balance of my Account as well as all other Account obligations, according to the terms of this Agreement.

## SECTION 19: FURTHER ASSURANCES

I agree that I will take any steps, including but not limited to, signing, filing or recording any documents, which are necessary or which the Bank deems appropriate, to be sure that my obligations to the Bank under this Agreement become and continue to be secured by the Security Instrument.

## SECTION 20: CHANGE IN RESIDENCE OR OWNERSHIP OF THE PROPERTY

I agree to notify the Bank immediately if (a) the Property is my primary residence and I cease to live in the Property as my primary residence, or (b) there is any change in the ownership of the Property. I agree that my Account shall be closed and that the entire outstanding balance of my Account shall be due and payable immediately on any sale or other transfer of the Property, unless prohibited by applicable law. In this regard, I understand that my Account is secured by a Security Instrument containing the following or a substantially similar provision:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## SECTION 21: CHANGE IN TERMS

To the extent allowed by law, I agree that the Bank may make certain changes to the terms of this Agreement at specified times or upon the occurrence of specified events. The Bank may make insignificant changes, such as changes in the address for payments, billing cycle dates, payment due dates, day of the month on which Index values are determined, Index or interest rate rounding rules, and balance computation method (if the change produces an insignificant difference in the interest or FINANCE CHARGE I am required to pay). The Bank may also make changes that will benefit me, such as additional options or a temporary reduction in rates or fees. In accordance with federal law, the Bank may also change the Index and Margin used to determine the ANNUAL

PERCENTAGE RATE(S) that apply to my Line of Credit Advances and/or Fixed Rate Advances if the original Index is no longer available. The Bank may make any of the changes discussed above without my consent, unless applicable law provides otherwise. The Bank will give me any notice of change that is required by law. I may also agree to changes in writing.

## SECTION 22: WAIVERS

### BORROWER'S WAIVERS

I waive my rights to require the Bank to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Agreement, or who agrees to make payments to the Bank if I fail to keep my promises under this Agreement, or who signs this Agreement to transfer it to someone else, waives these rights. These persons are known as "guarantors, sureties and endorsers."

### BANK'S NON-WAIVER

The Bank may fail to make use of any of its rights under this Agreement or the Security Instrument or under applicable law on one or more occasions, or delay or partially exercise such rights, without waiving any of its rights or amending any of my obligations. The Bank may fail to make use of any of its rights or delay or partially exercise such rights against one party, without waiving any of its rights against any other party to this Agreement.

## SECTION 23: GOVERNING LAW; SEVERABILITY

All interest, fees and other amounts charged or accruing in connection with this Agreement which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, this Agreement and all related documents, as well as the rights, remedies, and duties of the Bank and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the laws of the state in which the Property is located.

If any provision of this Agreement or the Security Instrument is determined to be invalid or unenforceable by a court of competent jurisdiction, the rest of this Agreement will remain in full force and effect and enforceable according to its terms. All references in this Agreement to the singular shall include the plural and vice versa.

## SECTION 24: LOST OR STOLEN ADVANCE REQUEST CHECKS; BILLING ERRORS

### LOST OR STOLEN ADVANCE REQUEST CHECKS (WHERE AVAILABLE); BILLING ERRORS

I will immediately contact the Bank at the phone number on my monthly billing statement and confirm by letter if any of my Advance request checks are ever lost or stolen, if there are any errors in my monthly billing statement, or if I suspect any unauthorized use of my Account.

The Bank will not return to me my cancelled Advance request checks or other Advance request instruments after paying them. The Bank will make available photocopies of my Advance request checks and other Advance request instruments upon request. I will examine my Account statements promptly in order to identify any improper or unauthorized entries. In consideration for the Bank's payment of each Advance request check, I agree that even though I will not receive the original Advance request checks, all time periods under the Uniform Commercial Code (UCC) for examining my monthly billing statement and reporting improper entries, including the UCC's statutes of limitation with respect to forged, unauthorized, or missing signatures or endorsements, will begin from the time my Account statement is first sent or made available to me.

### UNAUTHORIZED TRANSACTIONS

I will notify the Bank if someone has transferred, or may transfer money from my Account without my permission, or if I suspect any fraudulent activity on my Account. I can call the Wells Fargo Phone Bank at the telephone number on my monthly billing statement, anytime, 24 hours a day, 7 days a week, or advise my local

Bank branch office. I may also send written notice to the Bank at the address indicated on my billing statement.

## Billing Rights – Keep This Notice For Future Use

This notice contains important information about my rights and the Bank's responsibilities under the Fair Credit Billing Act.

### Notify The Bank In Case Of Errors Or Questions About My Bill

If I think my billing statement is wrong, or if I need more information about a transaction on my billing statement, I will send a letter on a separate page to the Bank, as soon as possible, at the address listed on my billing statement. The Bank must hear from me no later than 60 days after the Bank sent me the first billing statement on which the suspected error or problem appears. I can telephone the Bank, but doing so will not preserve my rights.

In my letter, I will provide the Bank with the following information:

- My name, Account number and daytime phone number, and
- The dollar amount of the suspected error, and
- A description of the error and explanation, if possible, as to why I believe there is an error. If I need more information, I will describe the item I am not sure about.

If I have authorized the Bank to pay my minimum monthly payment automatically from my checking account at the Bank, I can stop the payment of any scheduled automatic payment if I believe a billing error has occurred. To stop the payment, my letter must reach the Bank at least three business days before the automatic payment is scheduled to occur.

### My Rights And The Bank's Responsibilities After Receipt Of My Written Notice

The Bank must acknowledge my letter within 30 days, unless the Bank has corrected the error by then. Within 90 days, the Bank must either correct the error or explain why the Bank believes the billing statement was correct.

After the Bank receives my letter, the Bank cannot try to collect any amount I question, or report me as delinquent. The Bank can continue to bill me for the amount I question, including finance charges, and the Bank can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while the Bank is researching my Account, but I am still obligated to pay the parts of my bill that are not in question.

If the Bank finds that a mistake was made on my billing statement, I will not have to pay any finance charges related to the questioned amount. If the Bank didn't make a mistake, I will have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, the Bank will send me a statement of the amount I owe and the date that payment is due.

If I fail to pay the amount that the Bank determines I owe, the Bank may report me as delinquent. However, if the Bank's explanation does not satisfy me and I write to the Bank within ten days telling the Bank that I still refuse to pay, the Bank must tell anyone the Bank reports me to that I have a question about my bill. And, the Bank must tell me the name of anyone the Bank reports me to. When the matter has been settled between the Bank and me, the Bank must tell anyone the Bank reports me to that the matter has been settled.

If the Bank does not follow the above rules, the Bank cannot collect the first $50 of the questioned amount, even if my billing statement was correct.

### Special Rule For Credit Card Purchases

If I have a problem with the quality of property or services that I purchased with the Credit Card (defined in Section 27 below), and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right.

(a) I must have made the purchase in my home state or, if not within my home state within 100 miles of my

current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if the Bank owns or operates the merchant, or if the Bank mailed me the advertisement for the property or services.

## SECTION 25: NOTICES

Unless applicable law requires a different method, any notice that must be given to me or to anyone else who signs, guarantees or endorses this Agreement may be given by mailing it to my address as set forth above in this Agreement, or to a different address if I have properly notified the Bank of that different address. Any notice that I may send to the Bank must be given by mailing it to the Bank at the address provided on my billing statement, unless the type of notice is more specifically addressed in this Agreement and a different address is provided herein.

I agree that the Bank may contact me by telephone. I agree to accept calls from the Bank at any telephone number that I provide to the Bank.

## SECTION 26: EQUITYLINE PLATINUM® CARD ACCESS

### CREDIT CARD ACCESS
I hereby authorize the Bank to issue *EquityLine Platinum* card(s) (referred to as the "Credit Card" and collectively as the "Credit Cards") in the name of each Borrower who signs below. While the Account is not in default, closed or suspended, any Borrower may borrow money from the Account by use of the Borrower's Credit Card. If this is a joint Account, each Borrower is responsible for payment of the entire amount due resulting from the use of the Credit Card.

I understand that all Advances obtained by using the Credit Card will be Line of Credit Advances and not Fixed Rate Advances. If I want an Advance to be converted to a Fixed Rate Advance, I must advise the Bank directly in a separate communication.

Notwithstanding any default, termination or suspension of my Account, my right to use the Credit Card will terminate if and when my Account moves into the Repayment Period.

### FOREIGN CURRENCY TRANSACTIONS
If I engage in a transaction in a currency other than U.S. Dollars using an *EquityLine Platinum* card, then Visa International® ("VISA") will convert the charge to a U.S. Dollar amount. The exchange rate used to convert the currency to U.S. Dollars will be a rate selected by VISA from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives, or the government-mandated rate in effect for the applicable central processing date. The currency conversion rate on the applicable central processing date may differ from the rate that would have been used on the date of the transaction or the date the transaction posted to my billing statement.

### BANK NOT RESPONSIBLE FOR REFUSAL TO HONOR CREDIT CARDS
The Bank is not responsible for the refusal of any merchant, bank or ATM to honor or accept the Credit Cards issued on my Account.

### AUTHORIZATIONS
Some transactions with the Credit Card will require prior approval. These prior approvals are called "authorizations." If the Bank's authorization system is not working fully or if the number of transactions exceeds the limit for a certain period of time, the Bank may not give or the Bank may be unable to give an authorization even though the transaction would not exceed my credit limit and my Account is in good standing. For security reasons, the Bank cannot explain the details of how the authorization system works. I agree that the Bank will not be liable for failing to provide an authorization.

### LOST OR STOLEN CREDIT CARDS

Documents Processed 08-17-2006, 11:28:19

In addition to my other obligations to notify the Bank regarding billing errors and lost or stolen Advance request checks, I will immediately notify the Bank and confirm by letter if my Credit Card is ever lost or stolen or if another person has my Secret Code or Pin Number, if there are any errors on my monthly billing statement, or I suspect any unauthorized use of the Account and my Credit Card. I agree to assist the Bank in determining the facts, circumstances, and other pertinent information relating to any loss, theft, or possible unauthorized use of my Credit Card. If my Account is in good standing, the Bank will send me a new Credit Card with a new account number to replace the Credit Card that was lost, stolen or wrongfully used. Although I will be issued a new account number, I will not be considered to have opened a new account, and my existing balance will be transferred to the replacement account number.

I may be liable for the unauthorized use of my Credit Card. I will not be liable for unauthorized use that occurs after I notify the Bank, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, my maximum liability will not exceed $50. To notify the Bank of a lost or stolen Credit Card, or of unauthorized use of my Credit Card, I can either call the Bank at the telephone number on my monthly billing statement or at the number listed below anytime, 24 hours a day, 7 days a week, or I can advise my local Wells Fargo office followed by a written notice to:

Wells Fargo Bank, N.A., P.O. Box 4233, Portland, OR 97208-4233
Phone Number: 866-297-4532

## SECTION 27: ADDENDA

I agree to the following attached addenda, modifications or amendments:

N/A

## SECTION 28: STATE DISCLOSURES

**NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE**

THIS AGREEMENT, THE SECURITY INSTRUMENT AND THE CLOSING DOCUMENTS EXECUTED HEREWITH CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT OF THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS AGREEMENT.

**NOTICE TO THE BORROWER**

DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE THIS AGREEMENT IS SIGNED. READ THIS AGREEMENT BEFORE SIGNING IT.

## ACKNOWLEDGMENT

I have received, read and retained a copy of this EquityLine with FlexAbility⁕ Agreement and Disclosure Statement (the "Agreement"), the Security Instrument, the Agreement to Provide Insurance, and the HUD Settlement Statement provided to me at the closing, all of which I agree to by signing this Agreement. The HUD Settlement Statement is incorporated into and made a part of this Agreement. I acknowledge receipt of the EquityLine with FlexAbility⁕ Important Terms disclosure and the home equity brochure when I applied for this Account. In addition, I hereby agree that the terms of this Agreement replace the terms of any prior oral or written agreements between the Bank and me about this Account, including, for example, any and all commitment letters and pre-approval letters between the Bank and me about this Account.

14/15

Documents Processed 08-17-2006, 11:28:19

_(signature)_              (Seal)    8-21-06

BORROWER

**THOMAS L MILLER**               DATE SIGNED

_(signature)_              (Seal)    8-21-06

BORROWER

**MELISA A MILLER**              DATE SIGNED

_____ (Seal) _____

BORROWER                 DATE SIGNED

_____ (Seal) _____

BORROWER                 DATE SIGNED

_____ (Seal) _____

BORROWER                 DATE SIGNED

_____ (Seal) _____

BORROWER                 DATE SIGNED

_____ (Seal) _____

BORROWER                 DATE SIGNED

_____ (Seal) _____

BORROWER                 DATE SIGNED

Documents Processed 08-17-2006, 11:28:19